IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMES E. ROLLINS, Jr., et al,

    Defendants.                             Case No. 05-cr-30133-5-DRH

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

### I. INTRODUCTION

Before the Court is defendant James E. Rollins, Jr.'s Motion for New Trial (Doc. 450),[1] filed pursuant to **FEDERAL RULE OF CRIMINAL PROCEDURE 33**, to which the Government has filed its opposing Response (Doc. 454).

Rollins, Jr. was found guilty by a jury as to Counts 1 and 5 (Docs. 414 & 417) of the Indictment (Doc. 1). Count 1 charged Rollins, Jr. with conspiracy to knowingly and intentionally manufacture, distribute, and possess with intent to distribute cocaine and a mixture or substance containing cocaine base, in the form of, or commonly known as "crack" cocaine, in violation of **21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(A)** and **21 U.S.C. § 846**. Count 5 charged him with knowingly and

---

[1] The Court also notes it previously granted an extension of time for Rollins, Jr. to file this Motion (*see* Doc. 408).

intentionally distributing five hundred grams or more of a mixture or substance containing cocaine, in violation of **21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(B)**.

Regarding the jury's finding of "guilty" as to Count 1, the Special Verdict found Rollins, Jr. guilty of conspiring to distribute 500 grams or more but less than 5 kilograms of a mixture or substance containing cocaine base (Doc. 415). However, in a separate Special Verdict also regarding Count 1, the jury did *not* find Rollins, Jr. guilty of conspiracy to distribute 5 grams or more of a mixture or substance containing cocaine base, in the form of, or commonly known as, "crack" cocaine (Doc. 416). As to Count 5, the Special Verdict found Rollins, Jr. guilty of knowingly and intentionally distributing 500 grams or more of a mixture or substance containing cocaine (Doc. 418). Rollins, Jr. now awaits sentencing for his conviction, as well as resolution of this post trial motion.

## II. LEGAL STANDARD

Under **FEDERAL RULE OF CRIMINAL PROCEDURE 33**, a defendant may move for a new trial. Upon review, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." **FED. R. CRIM. P. 33(a)**. If the basis for seeking a new trial is not due to new evidence, then the Court must determine if a new trial is warranted because there exists a "reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." ***United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006) (citing *United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996))**. A new trial may also be warranted where a "trial errors or

omissions have jeopardized the defendant's substantial rights." ***United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (citing *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir.1989))**.  Such a determination is completely within the Court's sound discretion . ***Id*. (citing *United States v. Nero*, 733 F.2d 1197, 1202 (7th Cir. 1984))**.  However, the Court should be mindful that the power bestowed by Rule 33 to grant a new trial should only be done in the "most 'extreme cases.'" ***United States v. Linwood*, 142 F.3d 418, 422 (7th Cir.1998) (quoting *United States v. Morales*, 902 F.2d 604, 605 (7th Cir.1990))**.

### III. DISCUSSION

According to Rollins, Jr., justice requires that a new trial be granted because "errors committed in connection with the trial of this case and the evidence admitted during the course thereof," denied him a fair trial (Doc. 450, p. 1).  This Rule 33 Motion is made pursuant to five separate grounds, each to be addressed herein.

A.   **Severance of Trial**

Rollins, Jr. first states that the Court erred by denying his Amended Motion to Sever Trial (Doc. 262), made pursuant to **FEDERAL RULES OF CRIMINAL PROCEDURE 8 and 14**.  Specifically, Rollins, Jr. asserts that statements made by co-defendant Rollins, Sr. (his father) were introduced as evidence during the trial and served to implicate him.  Further, because his father was a co-defendant, Rollins, Jr. was unable to confront Rollins, Sr. as a "witness," thereby violating Rollins, Jr.'s

right to due process (Doc. 450, pp. 1-2, citing ***Bruton v. United States*, 391 U.S. 123 (1978)**). Rollins, Jr. also believes that by not severing his trial from his co-defendants, it was impossible for the jury to "compartmentalize the evidence" as it related to each co-defendant and it therefore could not make independent determinations of guilt. Instead, Rollins, Jr. advocates that the jury essentially applied a "guilt by association," line of reasoning, which a severance of trials could have avoided. Additionally, Rollins, Jr. states that had his trial been severed, he would have been able to call his co-defendants as witnesses to offer "critical exculpatory evidence and testimony" on his behalf. However, due to their privilege against self-incrimination, Rollins, Jr. was prevented from calling them as witnesses (Doc. 450, pp. 1-2).

In response, the Government contends that the "implicating" statement of Rollins, Sr., introduced as evidence during trial, does not present a problem under ***Bruton***; the statement, which was actually Rollins, Sr.'s post-arrest statement, was "thoroughly redacted" so as to not reveal Rollins, Jr.'s identity. Moreover, the Government notes that a limiting instruction was given to the jury, cautioning that the statement was *only* to be considered against Rollins, Sr. Therefore, the Government asserts there would be no need for Rollins, Jr. to confront Rollins, Sr. on cross-examination concerning the post-arrest statement. As to Rollins, Jr.'s assertion of the jury's inability to make independent determinations of guilt, the Government states that the law presumes otherwise (Doc. 454, p. 2, citing ***United***

***States v. Williams*, 858 F.2d 1218, 1225 (7th Cir. 1988)**).  In support, the Government points to the fact that the verdicts for each of the five co-defendants in this case were "very individualized."  Lastly, in opposition of Rollins, Jr.'s belief that his co-defendants may have given exculpatory testimony, the Government points to his failure to cite exemplars from the record or give any other detailed explanation in support of his blanket assertion.  In other words, the Government argues Rollins, Jr. did not meet the standard warranting a severance of trial – he has not shown actual prejudice.  It is not enough to merely opine that a separate trial would have presented him with better odds at an acquittal (Doc. 454, p. 3, citing ***United States v. Lopez*, 6 F.3d 1281, 1285 (7th Cir. 1993)**).

Regarding Rollins, Jr.'s argument that a new trial is warranted because the Court erred in failing to sever his trial from his co-defendants, the Court agrees with the Government.  As stated in the Court's December 18, 2006 Order (Doc. 267) denying Rollins, Jr.'s Amended Motion to Sever, the co-defendants were properly joined pursuant to Rule 8.  Therefore, Rollins, Jr. needed to show how joinder would be prejudicial to him, as joint trials are generally favored (Doc. 267, p. 3).  The Court noted that the law places a "heavy burden" upon a defendant to show prejudice. Rollins, Jr. was required to "demonstrate that he . . . would be unable to obtain a fair trial without a severance" (*Id*. at 4, citing **Lopez, 6 F.3d at 1285**).

Rollins, Jr.'s arguments regarding failure of the jury to make independent determinations of guilt and the possibility of co-defendants offering

exculpatory testimony merely rehash arguments he made in his Amended Motion to Sever (Doc. 267). In his Motion, Rollins, Jr. offered nothing but conclusory statements of this exculpatory testimony his co-defendants would offer if his trial was severed. The Court previously found this argument to be, at best, "entirely speculative" and completely devoid of evidentiary support (*Id*. at 5, citing **United States v. Studley, 892 F.2d 518, 525 (7th Cir. 1989)(A severance cannot be granted on the basis of a vague, unsupported assertion that a co[-]defendant would testify favorably in a separate proceeding.)(internal quotations omitted)**). Post-trial, the Defendant could not cite specific examples of prejudice, proving the Court's order to be correct.

Further, the law presumes juries capable of "sorting through the evidence and considering the cause of each defendant separately." **Williams, 858 F.2d at 1225**. In the instant Motion, much like his Amended Motion to Sever, Rollins, Jr. has failed to show any reason to go against this presumption. Simply because the jury found him guilty does not lend reason enough to sever in a multiple defendant case, otherwise, new trials would be granted for an overwhelming number of drug conspiracy cases. Contravening his assertion, the Court finds clear evidence that the jury *was* able to compartmentalize the evidence and make independent determinations of guilt by the fact that one of the co-defendants was acquitted. Thus, this reason is unavailing. What the Defendant is unable to avoid is that the evidence of Defendant's guilt was overwhelming, particularly in light of his voice on numerous

incriminating audiotapes.

At the time of Rollins, Jr.'s Amended Motion to Sever, he argued that certain statements of co-defendants may be used by the Government during trial, serving to implicate Rollins, Jr.; he would be unable to confront his co-defendants about these implicating statements. At the time, the Court found this basis too speculative to grant a severance, because the Government did not state that it intended to use such evidence and if it did, it would redact all reference to Rollins, Jr. (Doc. 267, p. 6). The Court further advised that should the Government seek to use such evidence during trial, the matter should be brought to the Court's attention in a timely fashion in order to determine whether a severance would then be necessary (*Id.* at 6-7).

During trial, the situation arose where the Government sought to introduce the post-arrest statement of Rollins, Sr.[2] The Court allowed the Government to introduce the statement, but required it be redacted to completely remove all reference to Rollins, Jr. As the Government correctly recounted, a limiting instruction was given to the jury that the statement was not to be considered as evidence against any co-defendant other than Rollins, Sr. (Doc. 432-2, p. 20 - Jury Instruction No. 12). In the Seventh Circuit, there is an assumption of the law that jurors follow their instructions and that a proper limiting instruction will cure a

---

[2] The Court notes Rollins, Jr. also filed a Motion in Limine to this effect (Doc. 336), seeking to exclude any of Rollins, Sr.'s statements made to DEA agents. During trial, the Motion was granted, as the Government agreed to redact any and all reference to Rollins, Jr. contained in that statement.

potential ***Bruton*** confrontation problem. ***Richardson v. Marsh*, 481 U.S. 200, 206-07 (1987) (citations omitted)**. This holds especially true when the statement at issue does not "expressly implicate" another co-defendant. ***Id.* at 208 (citing *Bruton*, 391 U.S. at 124 n.1)**. Instead, a statement which is not directly "incriminating on its face," (via redacting) but has the potential to become so when coupled with other evidence, will not warrant grounds for new trial due to violation of the Confrontation Clause. ***Id.*** Considering the correctional measures taken by the Government of redaction and limiting instruction, the Court does not find the failure to sever Rollins, Jr.'s trial from that of his co-defendants violated his due process right to confront an adverse witness. As such, this will not warrant grounds for a new trial.

**B.     Suppression of Electronic Surveillance Evidence**

Rollins, Jr. next challenges the Court's Order authorizing the Government to conduct electronic surveillance pursuant to **18 U.S.C. § 2518(1)(c)**.[3] Prior to trial, Rollins, Jr. filed a Motion to Suppress the Contents of Any and All Electronic Surveillance (Doc. 263), challenging whether the Order was properly granted in accordance with the statutory requirements. A motion hearing was conducted on January 4, 2007.[4] Specifically, Rollins, Jr. asserted that the

---

[3] **18 U.S.C. § 2518(1)(c)** requires that the application and affidavit provide a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

[4] Similar motions were also filed by co-defendants Rollins, Sr. and Rudy Slack, who also joined Rollins, Jr. in the January 4, 2007 hearing.

application and affidavit submitted by the Government requesting a Title III telephone intercept order was insufficient under **§ 2518(1)(c)**'s requirement to show necessity by specifically demonstrating the failure or infeasibility of other previously attempted investigative techniques. Denying the Motion to Suppress, the Court found that the application and affidavit sufficiently met the requirements of **§ 2518(1)(c)**.

Wiretaps are not required to be the *last* resort in an investigation, but also should not be the first method used either. ***United States v. McLee*, 436 F.3d 751, 763 (7th Cir. 2006) (citation omitted)**. Because the Government does not carry a heavy burden to meet the requirements of showing necessity for a wiretap order under **§ 2518(1)(c)**, a court order authorizing the wiretap can be issued for a variety of reasons. ***Id.* (citations omitted)**. In the affidavit submitted by United States Drug Enforcement Agency ("DEA") Special Agent John McGarry (lead investigator), it listed the other methods of investigative techniques used prior to requesting a wiretap order: use of confidential sources, consensual telephone calls, surveillance, administrative subpoenas, telephone records and dialed number recording (Doc. 278, p. 3). Other investigative techniques were rejected due to their inadequacy or because they would not be feasible given the particular circumstances of the investigation: body wires/monitoring devices, mobile tracking devices, closed circuit television cameras, trash seizures, Grand Jury subpoenas, undercover agents, target/associate interviews, search warrants, police records, pen register, SINS and

trap & trace (*Id*.).

The Government's reasons for seeking the wiretap order were further expounded upon through Agent McGarry's testimony given during the suppression hearing. Agent McGarry demonstrated, via his affidavit and later through his testimony, why a wiretap was necessary in order to secure evidence that the targeted subjects (Rollins, Jr. and co-defendants) were engaged in illegal activity, as well as reveal the "true scope and nature of the offenses and the unknown participants in them" (*Id*. at 4). A wiretap that enables investigators "to gauge the depth and scope of [a] conspiracy" meets the requirements under **§ 2518(1)(c)**. ***United States v. Fudge*, 325 F.3d 910, 919 (7th Cir. 2003)**.

Rollins, Jr. offers nothing additional in way of legal argument or evidence to support his assertion that the Court's ruling on his Motion to Suppress was erroneous. The Court still finds that the wiretap application and affidavit were carefully considered by the Court and found to have sufficiently met the statutory requirements warranting the wiretap order. The Government adequately demonstrated how it was reasonably unlikely that the alternate methods of investigation would work and that the wiretap was the only practical method for the investigators to make their case involving a number of conspirators. As such, a new trial cannot be granted as the Court does not find its prior ruling erroneous.

**C.     Testimony of Timothy Weddle**

**1.     Motion to Continue Trial or Exclude Weddle's Testimony**

Rollins, Jr. argues the Court erred in two ways concerning the testimony of the Government's witness, Timothy Weddle. First, Rollins, Jr. asserts that the Court erroneously denied his Motion to Continue Trial Date or in the Alternative, Exclude the Testimony of Timothy Weddle (Doc. 333), which was made several days prior to the start of trial. The basis for the Motion to Continue was because of the Government's "late disclosure of Mr. Weddle's proffer to government agents" (Doc. 450, p. 3). Rollins, Jr. believes the proffer, in which Weddle claimed to have purchased cocaine directly from Rollins, Jr., was exculpatory information[5] that should have been provided to defense counsel pursuant to the United States Supreme Court's ruling in **Brady v. Maryland, 373 U.S. 83 (1963)** and **Giglio v. United States, 405 U.S. 150 (1972)**.

Although the Court did not favor the late disclosure, even inadvertent late disclosure, it found:

> **18 U.S.C. § 3500(a)** does not require the Government to provide for a statement or report from one of its witnesses until *after* said witness has testified at trial. While it is within the discretion of the Court to order disclosure prior to trial, it is not a requirement. Further, **Rule 16** of the Federal Rules of Criminal Procedure does not provide for this type of disclosure. Therefore, [Rollins, Jr.'s] argument that he is entitled to such

---

[5] Rollins, Jr. considered this exculpatory because "[t]he allegations in Mr. Weddle's proffer differ substantially from allegations put forward in other discovery provided in this case in that Mr. Weddle claims to have purchased cocaine from Defendant [Rollins, Jr.] face to face" (Doc. 333, ¶ 5). Although the proffer was taken in August, 2006, the proffer report was not prepared by the DEA until January 3, 2007 and provided to defense counsel on January 15, 2007.

> information regarding Weddle is not well-taken . . . the rule and the statute do not require disclosure until after testimony and this Court will not require more than what is required by rule and law.

(Doc. 335 - Court's January 19, 2007 Order denying Motion to Continue).

Thus, the Court denied the continuance and also denied Rollins, Jr.'s alternate request to exclude Weddle's testimony. This holding aligns with Seventh Circuit law that exculpatory information must be disclosed by the Government, but disclosure can properly be made during trial without amounting to a **Brady** violation, "as long as the defendant is not prevented from having a fair trial." ***See, e.g., Kompare v. Stein*, 801 F.2d 883, 890 (7th Cir. 1986)(citing *United States v. Allain*, 671 F.2d 248, 255 (7th Cir.1982))**. As Rollins, Jr.'s argument merely amounts to a regurgitation of the arguments made in his Motion to Continue (Doc. 333) and because he has failed to demonstrate how this disclosure prevented him from having a fair trial, there is no need to further address the issue; the Court's prior ruling stands. Accordingly, this does not present valid grounds for a new trial.

    **2.    Second Motion to Exclude Weddle's Testimony**

Next, Rollins, Jr. takes issue with the Court's denial of his Second Motion to Exclude the Testimony of Timothy Weddle's Testimony. This was an oral motion, made during trial, stemming from letters written by Weddle to Assistant United States Attorney Randy Killian, and Detective Rathgeb. The Government provided these letters to defense counsel during the course of trial; the Government states that it had no intention of using these letters as evidence, however. Defense

counsel believed Weddle's letters revealed his intent to fabricate his testimony, as in one letter, he requested to see photographs of co-defendants John Frost and James Rollins, Sr. (although the Government construes the letter as one merely requesting Detective Rathgeb remind the DEA agent to follow through on a photographic lineup, previously suggested to Weddle by that DEA agent). According to defense counsel, Weddle wanted to see these photographs so that he could later identify the co-defendants during trial (presuming that if he did not actually know these co-defendants, he would not have been able to identify them otherwise).

Rollins, Jr. claims that the late disclosure of these letters "resulted in unfair surprise" to him, leaving "insufficient time to investigate the circumstances of the letters" (Doc. 450, p. 4). Conversely, the Government does not believe the letters offered exculpatory information to present any ***Brady*** disclosure requirements. However, the Government asserts that the Court gave defense counsel wide latitude to use these letters during cross-examination to attempt to impeach Weddle (including examination of matters beyond the scope of Weddle's direct examination). The Government is correct – during trial, in order to remedy any prejudice that might have been caused by the late (though not improper) disclosure, the Court also took the extraordinary measure of recessing trial so that defense counsel could investigate and prepare for cross-examination. Thus, the Court finds no prejudice has occurred due to these letters or the means in which they were disclosed. The Court agrees with the Government that the Weddle did not possess exculpatory information, at least based on his testimony and the letters at issue. In any event,

Weddle was effectively cross-examined by more than one defense counsel and a recess was taken to provide all counsel with ample time to prepare for that cross-examination. Rollins, Jr. again presents nothing further to substantiate his assertion of the Court's erroneous ruling and thus, it will remain.

### D.   DEA Special Agent McGarry

Special Agent John McGarry was the lead DEA agent on the investigation of co-defendants' drug distribution conspiracy. Part of his duty as lead investigator required him to oversee all wiretapped telephone calls. During trial, Rollins, Jr. filed a Motion in Limine to Exclude Expert Testimony of Undisclosed Government Witness (Doc. 342).[6] Rollins, Jr. sought to bar this testimony as it was not disclosed pursuant to a Motion for Disclosure of Expert Testimony made by co-defendant Slack (Doc. 276).

In particular, Rollins, Jr.'s argument in his Rule 33 Motion centers around the assertion that Agent McGarry was an "expert" witness for the Government, in that he testified as to what he believed "was occurring in the [wiretapped] conversation, including his beliefs as to which specific drugs, amounts and prices were being discussed in each conversation" (Doc. 450, p. 5). In other words, this "specialized" knowledge regarding code words for certain narcotics constituted expert testimony under **FEDERAL RULE OF EVIDENCE 702**. On the other hand, the Government asserted Agent McGarry's testimony was actually lay witness

---

[6] Co-defendant Talia Pittman also filed a similar Motion (Doc. 358). At trial, both Motions were argued simultaneously, with the remaining co-defendants joining in the Motions.

testimony under **FEDERAL RULE OF EVIDENCE 701**, as he merely provided his "impressions" of what he had personally observed from the wiretapped conversations. Therefore, because the Government never offered Agent McGarry as an expert witness, it does not believe there was any lack of compliance with the disclosure requirements of **FEDERAL RULE OF CRIMINAL PROCEDURE 16**.

Under **Rule 701**, lay opinion testimony must be limited to the observations of the witness "that are 'not based on scientific, technical, or other specialized knowledge within the scope of **Rule 702**.'" ***United States v. Conn*, 297 F.3d 548, 553 (7th Cir. 2002)(quoting FED. R. EVID. 701)**. The court must closely scrutinize lay witness testimony to ensure it does not encroach upon the realm of expert testimony, especially if that witness has not previously been identified as an expert witness. ***Id.*** In ***Conn***, the Seventh Circuit found the testimony of an ATF agent went beyond that of a lay witness because "[h]e was asked to draw upon his accumulated knowledge and to provide information to the jury about the appropriate characterization of Mr. Conn's firearms . . . ." ***Id.* at 554-55**. However, the Seventh Circuit acknowledged it was possible for an agent to testify as a lay witness if based only upon his personal participation in the investigation of the conspiracy. ***Id.* at 555 n.3 (citing *United States v. Miranda*, 248 F.3d 434, 441 (5th Cir. 2001))**.

This Fifth Circuit case cited in ***Conn***, although not binding precedent, is nevertheless insightful and on point with the issues raised by Rollins, Jr.'s Motion

in Limine.  In *Miranda*, the FBI Special Agent involved with the investigation of the conspiracy gave testimony regarding the meaning behind various code words used by the various callers to describe certain narcotics.  *Miranda*, **248 F.3d at 441**.  Defense counsel challenged the Agent's testimony, arguing it was actually **Rule 702** expert testimony and the Agent was unqualified to testify as an expert.  The Government argued the Agent's testimony was being offered as **Rule 701** lay witness testimony.  The Fifth Circuit agreed with the Government, stating as follows:

> [The Agent's] extensive participation in the investigation of this conspiracy, including surveillance, undercover purchases of drugs, debriefings of cooperating witnesses familiar with the drug negotiations of the defendants, and the monitoring and translating of intercepted telephone conversations, allowed him to form opinions concerning the meaning of certain code words used in this drug ring based on his personal perceptions.  We therefore hold that [the Agent's] testimony was admissible pursuant to Rule 701 and that the district court did not abuse its discretion in admitting his testimony.

*Id.*

During trial, the Court applied the same reasoning as the Fifth Circuit.  The Court limited Agent McGarry's testimony to his personal perceptions and information acquired solely from his extensive participation in the investigation of the conspiracy.  Allowing this testimony under **Rule 701** was permissible because the Court observed no consistency between various criminal drug conspiracy cases in regards to the narcotics code words used among the co-conspirators.  Instead, the code words seem individualized for each particular conspiracy, seemingly, at times, the co-conspirators come up with code terms "on the fly."  Therefore, there is no

universal narcotics "code language" that one may study and become familiarized with based upon training and experience. Thus, the Court denied the Motion because "each group of conspirators is different and there's no way to really apply your training and your experience to figure out what each group's terminology means. It's just guesswork each and every time . . ." (Trial Transcript, January 26, 2007).[7]

Rollins, Jr. has presented nothing more than a broad assertion that the Court's decision to allow Agent McGarry to testify as a lay witness was erroneous as his impressions were irrelevant or unduly prejudicial. Moreover, the supporting cases cited in his Rule 33 Motion are distinguishable, because the testifying agents were attempting to draw upon their experience when deciphering the narcotics code words. In this case, the Court found there was no "universal code" with which one could study or become proficient in over time, and it also limited the testimony to Agent McGarry's own perceptions with the investigation regarding the conspiracy at issue in this case only. Rollins, Jr.'s argument, therefore, is not well-taken. Moreover, the jury was advised at the time of the testimony that it would have to decide for itself whether to accept the Agent's interpretation of the phone calls and decide for itself the meaning of the words in question. Further, because the Court does not find Agent McGarry's testimony constituted **Rule 702** expert testimony, it also finds the Government did not fail to properly disclose under **Rule 16**. Even had

---

[7] The Court notes that there are no page numbers as a transcript for this portion of the trial was never ordered and therefore, the quote is taken from a rough draft of the real time electronic transcript.

this testimony been inadmissible, the Court does not find it would have prejudiced the jury's verdict as there was other witness testimony provided to decipher the code language, amounts and pricing of the narcotics, from which the jury could have derived its finding of guilt.

### E.      Government's Conduct

In this Rule 33 Motion, Rollins, Jr. also contends that the Assistant United States Attorney ("AUSA") assigned to prosecute this case violated his due process rights and right to a fair trial based upon three grounds: (1) by not acting with proper diligence in obtaining materials from government agents resulting in "prejudicial delay" in disclosing Weddle's proffer and (2) Weddle's letters; and (3) by eliciting testimony from Weddle that the AUSA should have known was false. As for the first two grounds, the Court has already found there was no prejudicial delay in the disclosure of Weddle's proffer or his letters and therefore, the Government's conduct in this regard did not violate Rollins, Jr.'s due process rights. Further, it did not violate his right to a fair trial, as there was considerable other incriminating evidence for the jury to base its finding of guilt.

During trial, the Court also found no clear indication to deem Weddle's testimony as "false." For the Court to grant defense counsel's request to bar his testimony would be too extraordinary of a sanction unless the Court was able to absolutely find Weddle perjured himself. The Court already allowed defense counsel the extraordinary measure of recessing the trial so that there would be additional time for investigation into Weddle's letters to prepare for cross-examination.

Further, during Weddle's cross-examination, the Court gave defense counsel the opportunity to go beyond the scope of direct. The Court does not find prosecutorial misconduct existed in this case, and even if, in theory, there had been misconduct of some form, it would still not be enough for Rollins, Jr. to meet his Rule 33 burden to warrant a new trial.

## IV.  CONCLUSION

To summarize, the Court does not find that the items raised in Rollins, Jr.'s Rule 33 Motion amount to trial errors. In any event, in the Court's discretion, it does not find Rollins, Jr. has met his burden under Rule 33 to show that Court error resulted in having a prejudicial effect upon the jury verdict nor did it jeopardize his substantive rights in order to justify the extreme remedy of granting a new trial. Accordingly, Rollins, Jr.'s Motion for New Trial (Doc. 450) is hereby **DENIED**.

**IT IS SO ORDERED.**

Signed this 24th day of May, 2007.

/s/      David   RHerndon
**United States District Judge**